# SUPERIOR COURT,

## SPRING SESSIONS,

## 1890.

---

### Hawkins *v.* Dougherty, Tax Collector.

*Poll-Taxes—Payment by Agent—Mandamus—Parties.*

A., being a taxable of and owning taxed property within a county, has such a practical interest in the collection of the county taxes that the court will entertain his petition praying for an alternative *mandamus* against the tax collector, who had refused to accept poll-taxes tendered by, and to deliver receipts to, attorneys in fact of certain taxables.

The constitution and the law equally contemplate the payment of public taxes by the taxable in person, yet there is no legal prohibition of its being done through an agent, and if a collector deliver a receipt therefor to an agent, duly authorized to receive it, he would be exempt from any penalty for improper delivery of receipts.

A tax collector, having the right to collect taxes from the taxable himself, of which right no court by a *mandamus* can deprive him, cannot be compelled to receive a principal's taxes from the hands of his agent or attorney in fact, but if he refuses taxes thus tendered to him and afterwards fails to collect them, he will be liable on his official bond for the amount thereof.

A collector has the right to decline to deliver a tax receipt to any one but the taxable himself.

A court will not interfere and declare what the collector of taxes shall do, there being yet about two months in which he may perform his duty in the collection of taxes.

" An act in relation to the collectors of taxes in this State.    *    *    *    Sec. 3.
   *    *    *    It shall be the duty of the collector of county taxes to give receipt for taxes received, and, in addition to his signature, to make the impression of the seal of the hundred or collection district for which he is collector upon all receipts given by him for county rates."

( <i>New Castle, January 15, 1890,</i>)

RULE to show cause why a writ of *mandamus* should not be issued.

*W. C. Spruauce, P. Q. Churchman* and *Anthony Higgins* for relator.

In this country mandamus is not now regarded as a prerogative writ.

*High,* Sec. 3 ; *High,* Sections 4, 5 ; *Kentucky v. Dennison,* 24 Howard, 66.

2. *The relator as a citizen and tax payer, has the right to institute this proceeding against the respondent in the name of the State without the use of the name of the Attorney-General.*

*High,* Sec. 430 (a).

Where the question is one of public right, and the object of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are instituted need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and as such interested in the execution of the laws.

*High,* Sec. 431 and Note 1 for full citation of cases; *High,* Sec. 432–433 ; *State v. Brown,* 38 Ohio, 344 ; *People v. Collins,* 19 Wend., 56 ; *Uniontown v. Commonwealth ex rel Veech,* 34 Penna. State, 293 ; *Atty. Gen'l v. Boston,* 123 Mass., 479 ; *Union Pac. R. R. Co. v. Hall,* 91 U. S., 354–5–6, and cases there cited ; *Board of*

*Liquidation v. McComb*, 92 U. S., 541; *State v. Weld* (Minn.), 40 N. W., 561; *People v. Halsey*, 37 N. Y., 344; *Hall v. People*, 57 Ill., 307; *Humphrey v. Mayor*, 47 Md., 145.

The writ was refused in *Lyon v. Rice*, 41 Com., 271, not because the relators had no right as citizens to act as such, but because they proceeded in their *own names* and not in the name of the State upon their relation.

The interest of the relator in this case is similar to that of the relators in the cases above cited. · The duty which is here sought to be enforced is a public one but one in which the relator has a personal interest as a citizen and a tax payer.

It is no answer to his claim of interest as a tax payer to say that his tax for this year has been assessed and paid. If any of the taxes of this year which should be collected are not collected, the deficiency must be supplied by future increased taxation by which the burden of the relator must be increased.

The Constitution guarantees to the relator and all other citizens that " all elections shall be free and equal." But they cannot be so, if the way to the ballot box is barred by a public officer who obstructs and impedes citizens in their efforts to qualify to vote.

It is claimed that the right to qualify as an elector by the payment of a tax is a private personal right, and that none but those whose taxes have been refused are competent relators.

But if such persons only are injured, then such injury is several and a several remedy alone is applicable, and if two or more of such persons should join as relators the application would be dismissed for misjoinder.

This would necessitate separate petitions for each of the one hundred and fifty persons named in the present petition and hundreds of others in like case.

Such a rule would not only be at variance with the settled practice of the Courts, but would lead to hopeless multiplicity of suits, and render the remedy by mandamus inadequate and impracticable.

It is sufficient if the relator in this case has the requisite interest, either as a tax payer or as a citizen.

He is merely the medium by which the evils complained of are brought to the attention of the Court.

3. *There is no other adequate and specific remedy.*

Statutory penalty against the officer or failure to perform his duty—or the fact that the party aggrieved has a remedy by action on the bond of the officer—will not bar the issuing of a mandamus, as these remedies are not specific and adequate.

High, Sec. 35.

4. *Mandamus is the proper remedy against a tax collector to compel him to collect taxes, etc.*

Stated in general terms, the principle is that mandamus will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is left in their performance, but that as to all acts or duties necessarily calling for the exercise of judgment and discretion on the part of the officer or body at whose hands their performance is required, mandamus will not lie.     *     *     *

If     *     *     *     a clear and specific duty is positively required by law of any officer, and the duty is of a ministerial nature, involving no element of discretion and no exercise of official judgment, mandamus is the appropriate remedy to compel its performance, in the absence of any other adequate and special means of relief, and the jurisdiction is liberally exercised in such cases.

High, Secs. 24, 25 and 34.

Mandamus is the appropriate remedy to be employed against delinquent tax collectors to enforce the performance of their duties.

High, Sec. 143.

5. *All material, allegations of fact contained in the petition*

*which are not well traversed, or confessed and avoided by the answer, are admitted.*

The answer is in many respects evasive, but it substantially admits the material allegations of the petition.

The claim of due diligence is chiefly confined to the period prior to October 1.

It admits that during October and November the poll taxables named in the petition (about 150 in number) with others, crowded the office of the respondent, persistently demanding that he should receive their taxes. Nor is the admission weakened by the allegation that they did this in a "tumultuous manner." If such was their manner, there is abundant excuse for it in absences, delays, discriminations and obstructions of the respondent which rendered their efforts to pay their taxes wholly unavailing.

It is apparent from the papers before the Court that if the respondent continues to conduct himself as he did during the months of Octobor and November, the payment of poll taxes in person will be attended with great inconvenience and loss of time and money by the taxables—and that many poll taxes will remain nn-collected and be returned delinquent.

One mode, by which it is proposed to remedy these evils is to require the collector to receive taxes when tendered through duly authorized agents or attorneys.

6. *It is a maxim of our laws, subject only to a few exceptions, that whatever a man sui juris may do by himself, he may do by another.*

*Story on Agency*, Secs. 2 and 6.

The exceptions to this rule are when the act to be done is of a *personal nature*, and is capable of being delegated—or when it is a *personal trust* or *confidence* and therefore by implication prohibited from being delegated.

*Story on Agency*, Sec. 12, and note 3.

7. *A taxable has the right to make payment of his tax by agent or attorney duly authorized by him.*

*Bennett v. Hunter,* 9 Wallace, 326 ; *Tacey v. Irwin,* 18 Wall., 549 ; *Atwood v. Weems,* 99 U. S., 183 ; *U. S. v. Lee,* 106 U. S., 196.

In the case now before Court the authority to pay the taxes and receive the receipts for the same was given to the attorneys in the most solemn manner known to the law—by powers of attorney, executed in duplicate, duly signed, sealed and witnessed, and delivered to the attorneys. Duplicate originals of these powers of attorney, were, at the time of the tender of the taxes, delivered to the collector who now holds the same as full and undisputed evidence of the authority of the attorney—and as the certain means of detecting any fraud or imposition. Duplicate originals of the same are also filed in this Court and made a part of these proceedings. We do not claim that it is the duty of the collector to receive taxes from, or to deliver receipts to persons not duly authorized by the taxables ; nor to recognize persons who do not show to him full and sufficient authority from their principals—but we do insist that where the authority is shown, and is sufficient and indisputable, he is bound to receive the taxes and deliver the receipts, and upon refusal, he should be compelled to do so by this Court.

8. *No such discretion belongs to the office of collector of taxes as is claimed by the respondent.*

It is admitted by the respondent, that in a *general sense* the office is ministerial, but he claims that while he has not a *general discretion* (i. e. to wholly refuse to collect taxes)—that he has a *particular* discretion (i. e. as to *when* and *how* he shall collect.)

The answer and the argument of the respondent's counsel put him quite beyond the control of the Court in respect to *how* he shall perform the duties of his office.

He admits, that in receiving taxes he gives preference to one

class of taxables (property) over another (poll) that he does not and will not attend at his office at such hours as would be most convenient to persons employed at labor—that he leaves large numbers of poll taxables waiting at his office to pay their taxes—that he receives assistance in the collection of property taxes, but refuses it in the collection of poll taxes—that he leaves receipts signed in blank with his clerk whom he authorizes to collect property taxes in his absence, but refuses to allow him to collect poll taxes—that he receives property taxes when tendered by agent or attorney, but refuses to receive poll taxes unless tendered in person —and claims that all of those, and like matters " are solely within his own selection and discretion and are not subject to the control of this Court.

We claim that the respondent, like all other ministerial officers is subject to the order and control of this Court in respect to the mode and manner in which he shall perform the duties of. his office—and that the Court will not for a moment countenance the license which has been usurped by the relator·

The act of 1873 (Rev. Code, p. 90) requiring publication of notice and attendance for three days in the year is not as claimed by the respondent, the Statutory measure of the diligence required of him. It is merely the provision of a mode of *construction* instead of *actual* demand for poll taxes—Seȩ Sec. 2.

His duty begins with the receipt of his duplicate, and continues until the meeting of the Levy Court in March.

The law requires that he shall pay to the County and Poor Treasurers one-third of the county and poor taxes by July 1st— one third by October 1st, etc.

Seȩ Revised Code, p. 87, Sec. 7.

9. *No Statute of this State in express terms limits the right to pay a poll tax to payment by the taxables in person, nor can any such limitation be inferred from the provisions of any Statute relating to the assessment and collection of taxes.*

The duty imposed upon the collector to give duplicate tax receipts (R. C., page 90, Sec. 21), is not limited to *personal* applications. It is as clearly his duty to deliver such duplicate receipt to a duly authorized agent or attorney of the person whose tax has been paid, as to such person himself.

10. *It is not contrary to public policy to require the respondent to receive poll taxes when tendered by the duly authorized agents or attorneys of the taxables.*

We admit that it is not the duty of the respondent to receive taxes, or to give receipts for taxes except when paid by the taxables personally or by those whom they have duly authorized to act for them ; and also that he has the right to require proper evidence of the authority of the alleged agents or attorneys.

In any case in which the collector has reason to question the genuine character of the power of attorney presented to him, he has the right to refuse to recognize it until he has a reasonable opportunity to investigate the subject—but in the cases before the Court there is no pretense that there is any reason to suspect that *these* powers of attorney are not what they purport to be.

The intimation that it is the purpose of the attorneys named in the petition to retain the receipts of their constituents, and thus control their votes, contrary to the provisions of the act of 1881, as to coercion and intimidation of electors, is wholly unwarranted.

But should any attorney retain the receipt of his principle against his will the remedy is easy—he may require the collector to furnish him a duplicate receipt (R. C., page 90, Sec. 21).

That a taxable must pay his poll tax with his *own money* (whatever that may mean), and that if it has been loaned, advanced, or given to him or for him by another, it is not of the quality or kind required by the constitution, and may be rejected by the collector—is a doctrine as novel as it is dangerous.

If this is to be added to the other *particular discretions,*

claimed for collectors, few poll taxes will be received by them except from members of their own political party.

11. *In the exercise of a sound discretion, the Court should grant the writ of mandamus as prayed for by the petition.*

Whether the difficulty in personal payment of poll taxes, to the respondent, arises from his intentional obstructions, or from his justifiable, or excusable conduct in the premises, it is apparent from the papers in the case, that such difficulty exists, and that there is need of some method to facilitate the payment of poll taxes.

We insist that the payment by attorney, whenever the taxable for any reason chooses to adopt that method, is not only lawful but convenient and desirable both as respects the individual and the public interests.

*John H. Rodney, George H. Bates* and *George Gray*, for the defendant:

This is a rule to show cause why a peremptory writ of mandamus shall not issue for the reasons set forth in the petition filed in the case.

The writ of mandamus while in the nature of a writ of right, is granted only in the exercise of a wise judicial discretion, and is not an absolute right in all cases. It will only be granted when the right to it is clear and undoubted and where there is no other specific remedy.

The preliminary inquiry may properly be directed to the point whether this petitioner is the proper person and has shown proper grounds for such action.

It is not denied that the writ of mandamus will lie upon the application of any citizen to enforce a public duty as distinguished from a private right, but the Court must be satisfied that,

1. It is a public right, or if a private right, that the petitioner has been injured in the case.

2. That the granting of the writ of mandamus is necessary for the performance of such public duty, or to enforce such private right.

3. That the party applying, if on his own behalf, or those in whose behalf the application is made, if for others, have been diligent in enforcing their rights, and have not by their delay and negligence caused or produced the injury of which complaint is made.

It may be first noticed that as laid down in the books the distinction as to such public and private rights as may be enforced by the writ of mandamus is that in the latter a demand and refusal is necessary, in order to evoke this power, but in public matters no such demand and refusal is necessary, but this case, in order to afford any relief must be bottomed and founded upon the fact of a demand and refusal on the part of this official to perform his duties, therefore it is purely a private matter, and being so, the petitioner has no status in this Court to ask its intervention in this way.

*High Ex. Rem.*, Sec. 13.

Shortly stated, the application is made to this Court upon two grounds.

1. That by the action of this defendant, the revenue of the county will be reduced, whereby he, the petitioner may be required to pay more than his just proportion of county taxes, at the same time stating that he has paid those taxes assessed upon him.

2. That having an interest that all elections shall be free and equal all citizens who are entitled to qualify as electors at such

elections and particularly that of 1890 shall have an opportunity to so qualify by the payment of a county tax.

The grounds therefore are two, the raising of revenue and the qualification to vote.

It is submitted that the ground for the petitioner's action based upon the payment of taxes as revenue to the county as set forth in the petition, is purely a private right. The writ is asked for from an apprehension that he may be required to pay more than his just proportion of taxes and to compel action on the part of a public official. In order to prevent this private injury it must be shown that such injury is at least likely to occur. But it will be noticed that in the same petition it is set forth that the taxes of this petitioner have been duly assessed, in which case the amount is fixed with absolute certainty and cannot be enlarged or increased by any action of this defendant. Even were this not so, the further allegation is made that the tax so assessed upon the petitioner has been actually paid. It is therefore fixed beyond all peradventure that the petitioner can in no way be called upon or compelled to pay more than his proportionate share of the taxes which by his duplicate the defendant collector is empowered to receive and collect. The payment of more than his just proportion of the county taxes by the petitioner being therefore purely a private matter even that grievance is shown not to exist for it is already paid and no order of the Court can prevent the result or produce a different one.

But conceding that the relator has a personal and special interest that all other taxables should pay their taxes, and that their non-payment would impose an additional tax or burden on him, yet the time fixed by law for the collection of taxes has not yet arrived, there still remains three months in which to collect such taxes, and *non constat*, but that they will all be collected by him. For he cannot collect by law until after demand made by him and the time at which the same shall be made, as limited by law has not yet arrived, to wit: January, 1890.

*High, Ex. Rem.*, Sec. 12, Sec. 36, Sec. 59; *State v. Kearney*, 3 Kansas, 83; *State v. York, &c.*, 8 Neb., 94; *Public School Com. v. County Com.*, 2d Md., 449.

Under the 3d head mandamus will not be granted where there is laches of party applying.

It will be noticed that as a matter of fact the collector gave notice in May last of his place of business and readiness to receive taxes, and if opportunity was denied any person to pay the same and a mandamus could properly lie to enforce the duty of the officer, a delay for merely seven months would be negligence and laches and would be grounds for refusing the writ.

A person must use due diligence in availing himself of this extraordinary remedy.

Laches of the party aggrieved in seeking to avail himself of the remedy by mandamus may operate as a bar to relief.

*High Ex. Rem.*, Sec. 204, Sec. 209; even one year's acquies-cence has been held fatal; *People v. Senaca Com.*, Pleas 2 Wend., 264.

It is admitted that where the question is one of public right and the effect of the mandamus is to procure the enforcement of a public duty, the people are regarded as the real party, and the re-lator at whose instigation the proceedings are instituted and not shown that he has any legal or special interest in the result, it being sufficient to show that he is a citizen and as such interested in the execution of the laws.

*High Ex. Rem.*, Sec. 431.

But it is submitted :

1. That the right to qualify one's self to vote is not a public right, but a personal privilege alone, to be exercised or not as each individual may determine for himself, and is similar to the personal privilege of voting, and is a matter which involves no public right or public duty whatever. The interest of the relator as a citizen as disclosed by his petition, that the election shall be " free and

equal ". is a public right, or interest, common to all, but not a question to be considered in this case. With elections or the manner of conducting them the collector (this defendant) has nothing to do. The election officers alone are entrusted with the duty of securing freedom and equality at the elections. The right to qualify as a voter therefore being a personal and private right those parties alone whose right in so qualifying, may be endangered, should make the application for this writ.

But again, should it be admitted that the rights sought to be enforced are public and the relator is the proper party to institute these proceedings, what public duty has the defendant failed to perform?

Whenever public officers are vested with powers of a discretionary nature as to the performance of any official duty or in reaching a given result of official action they are required to exercise any degree of judgment (discretion) and Courts will in no manner interfere with their discretion.

*High Ex. Rem.*, Sec. 42; *People v. Brennan*, 39 Barb., 651; 20 Wendall, 658; 2 Cowen, 458; 18 Wendall, 78; *New York v. Adams*, 9 Pet., 602; *People v. Whipple*, 41 Mich., 548.

It is here contended that each collector of taxes in this. State, and the defendant as one, while he has no discretion as to the exercise of the duties imposed by law upon him, has a discretion proper and inherent in every official as to the details and proper management of his office.

The Court can require him to comply with the requirements specifically imposed upon him by law, but the judgment or discretion which he exercises as to the mode of carrying out these requirements, are beyond the cognizance and jurisdiction of this Court.

The allegation therefore that he arranges the business of his office to the dissatisfaction, or may be inconvenience of certain persons, that his hours of business it may be are not regular, or perhaps his personal bearing unattractive and repellant and of no

value, it is submitted these matters being entirely beyond the province of this Court to remedy, being entirely within his discretion.

In addition any order the Court might make in such a case would be futile and inconclusive.

Mandamus will not be granted when the result would be fruitless. If therefore the granting of the writ upon these points would be fruitless, it will not be granted.

*High Ex. Rem.,* Sec. 14.

If therefere, it be true that the allegations in the petition as to unreasonable laches and inconvenience to taxables is no proper subject of consideration for this Court being entirely within the discretion of the defendant, the grounds upon which this application is based are reduced to three.

1. That the defendant as collector is under a legal obligation to collect taxes, and that the law imposes a positive duty upon him for that purpose.

2. That the collector is obliged to receive taxes and give tax receipts to any person applying for the same on behalf of another.

3. That he should give receipts and receive taxes from the persons specifically named upon letters of attorney presented to him by strangers.

Under the law as it existed prior to the Act of 1873, and under the terms of his warant the collector was obliged to collect taxes upon giving ten days notice to the taxable, but by the law of 1873 this duty was modified. This enactment is not in conflict with the prior law, but relieves the collector from making actual demand, providing only that in regard to the collection of poll taxes he shall make affidavit that he has during the month of January attended at a certain place according to notice posted for three days and for five hours in each day, for the purpose of collection of taxes. Complying with this provision he fulfils his whole duty. For he can dispense with the demand necessary under the old law,

and by the express terms of the act of 1873 the publication afore-said is the only demand it is necessary for him to make in the collection of poll taxes, and the law does not contemplate the collection of taxes prior to that time.

As to the remaining two grounds they may be considered together, being open to the same objection.

And first. It may be said, that the discretion of the collector in this matter is not to be controlled by the summary writ of mandamus. He is the authorized agent of the Levy Court in the collection of revenue, being responsible with his sureties for the whole amount of taxes contained on his duplicate and for the faithful performance of his duty as collector, so that for any wilful neglect of this performance of his duty there is full and complete remedy at law.

As a matter of monetary regulation and as a business transaction the collector in his discretion can refuse to deal with an agent, taking the ground that is expressed in the petition, that a payment of a tax is a pro-requisite to qualifying as an elector it is submitted that the payment of such tax is a personal privilege. By all the analogies of the provisions of law in reference to the qualifying for voting, a personal action is contemplated. The constitution provides as a preliminary that the person shall have paid a tax. It is necessary for the party to make personal application to be placed upon the assessment list. In the issuing of duplicate tax receipts the law is specific that it must be to the person and the money therefore paid by the person so applying a *fortiori* how much stronger is the reasoning that an application for original tax receipts must be made in person. But apart from these considerations the writ of mandamus being entirely discretionary it is confidently urged that a proper discretion would prevent the collection in the hands of individuals of large quantities of these receipts· Upon the petitioner's own ground that the payment of a tax is a pre-requisite of voting it is against the spirit of our laws and institutions and would be productive of great fraud and subversive of the

freedom of elections for the Court to order the collectors of taxes to deliver the evidence of the right to vote to other than the parties themselves to whom they give that right.

Viewing the matter from this standpoint of the petitioner, that tax receipts are necessary to properly qualify one to exercise the right of suffrage, it is the duty of the collector to faithfully guard the same and see to it that they come into the hands of those who alone can properly use the same, namely, the taxables themselves. And he would be derelict in such duty were he to act otherwise.

COMEGYS, C. J. This case was well presented to the court by the counsel on both sides, and we suppose all that could be urged, *pro* and *con*, in the controversy before us has been brought forward in the argument for our consideration. It is on some account unfortunate that it became necessary, as was supposed, to introduce it into the business to be tranacted by the court; for in all such disputes, no decision can be rendered that will be satisfactory to more than one class of the people. It is not improper, I think, to say that this seems to be a vital controversy to both the political parties in this State; the unwonted zeal which characterized the discussion on both sides indicating such importance very plainly. It would have been very agreeable to the court to be spared the necessity of giving a judgment which, in any event, (such is the temper of political partisans,) cannot satisfy the public generally, but only a part of it. However that may be, it is our duty, as the case is before us, to decide it as we best may, according to our ability; and we will trust that the better portion of those discontented with the decision will ultimately believe the view we take of it is the correct one.

Before entering upon a consideration of the principal question in the case before us, it is proper that we should determine whether the petition filed by the relator should be entertained by the court, in view of the objections set forth in the argument of the counsel

for the defendant: *First*, that the relator has no practical interest in the subject-matter of his complaint, except in such a minute degree as will not justify the court in setting in motion its extraordinary remedy for alleged breach of public duty by an officer; and, *second*, that the application is made prematurely. With respect to the first of the objections it appears to be the law, as shown by the authorities on that point cited by the relator's counsel, that any interest of a legal and direct character will warrant the issuance of an alternative mandamus, and ultimately the peremptory writ, unless sufficient cause upon the hearing of the rule be shown against it. The relator, John W. Hawkins, has an interest in the performance of his public duty by the respondent, to wit, the collection of all the tax committed to him to be collected, (he being a taxable of the county, owning property within it,) and which duty he claims the respondent has not performed, but refuses to perform, it being alleged to be the receipt of all money offered to him for the payment of taxes and delivery of receipts therefor; the facts set forth in his application being that the respondent has refused, and announced his purpose to refuse, poll-taxes, and to deliver to attorneys in fact of taxables assessed for them, by whose hands the money was tendered, receipts for the money paid in the form prescribed by the act of April 10, 1873. The respondent, in his return to the writ, alleges that he has not refused to receive any poll-tax committed to him for collection, but only has declined to receive such taxes from others than the taxables themselves, and to deliver to such others the receipts aforesaid; that is, he refuses to give the tax receipts to the attorney in fact of the taxables, and this under advice of counsel. He also says that he has always been ready, when not engaged otherwise officially, to receive taxes from all taxables applying to pay them, and give them the receipts provided for by law; and that he shall be so ready thereafter, (the time of the return,) until the March sessions of the levy court, then near three months off. This is the substance of his answer to the relator's charges. But for the fact charged, and not denied, and therefore to be taken

as true,—that the collector had refused to attorneys in fact of taxables the receipts for taxes provided for by the statute for taxes tendered by them,—there would have been no question to present to the court for the writ of mandamus. The relief sought depends, so far as anything at present appears, upon the question whether or not the collector was bound to receive the money of taxables, when tendered through an attorney in fact, made for the payment of constituents taxes, and deliver to such attorney the receipts therefor; he being authorized by the powers of attorney to receive them from the collector. Let me express it generally : Is a collector of county taxes bound to receive from an attorney in fact or agent of a voter his tax, and deliver to such attorney or agent a receipt for it, provided for by the third section of the act of April 10, 1873, aforesaid, entitled " An act in relation to the collectors of taxes in this State ?"

There is certainly no provision of the law for the collection of taxes which requires of a collector that he shall, in the discharge of the duties of his office, (to collect taxes and give receipts for them,) deal with an attorney in fact or deputy of the tax-payer. As was said in the argument, the constitution and the law equally contemplate the payment of public taxes by the taxable in person ; but there is no prohibition against doing it through an agent, because, as a general rule, (and payment of taxes is no exception to it,) whatever concerns one's own private interest alone he may do through the assistance or agency of another. In fact, nearly everything pertaining to a man's own affairs simply is oftener done by others than himself. No reason can be given why a taxable should not appoint an agent or attorney to act for him in the payment of tax assessments as well as other claims. This is his unquestionable right, and where, as in the cases of appointment shown by the affidavits in support of the relator's petition, this has been done, a collector would not only disregard his oath of office, but be guilty of a breach of his official bond, if he refused to receive the taxes tendered by an attorney in fact of a taxable, unless he collected the

same against such taxable, in person or otherwise.  A valid power of attorney, as those exhibited in this case are conceded to be by this respondent, would not only be a means of saving the collector the necessity of calling in person upon the taxable, but shield him also from the penalty of the law against improper delivery of the receipts; for certainly a tax receipt delivered to an agent authorized to receive it could not be treated, in a criminal prosecution under the aforesaid third section of the act aforesaid, as one made for an unlawful or fraudulent purpose.  The clause was put into the act of 1873 to prevent delivery by a collector under just such circumstances as those mentioned in one of the clauses of the respondent's answer.  Still, as has been said before, there is no statute which requires a collector to receive one man's taxes when offered by another acting as agent or attorney for him, although he would be liable on his bond for refusal to do this, the same as if the offer to pay had been made by the taxable himself.  But this liability under his official bond is not one of which the taxable can avail, but only the public, through the agency of their servants, the levy court commissioners.  Although a man may make another his agent to receive a sum of money for him, there is no process known to the law to compel payment to such agent; but the constituent of the attorney has his remedy by ordinary action to collect the debt himself.  The right to pay to a properly constituted attorney may exist; but yet the debtor cannot be compelled to pay him.   So, in this case before us, the collector, not questioning the validity of the instrument appointing the attorney, had the right to act upon it if he chose, and would have been safe in doing it; yet he could not have been compelled to do it on refusal, for he had the option to collect from the taxable himself, of which no court by a mandamus can deprive him.   Only when it is evident that he does not intend to collect in one way or the other can the law be invoked to aid the taxable.   In case of refusal by the collector to allow an agent to pay his principal's tax, such principal must pay his own tax.   If he offer to do so, and the collector deny him the opportunity, then

he may come to this court, and he shall not be denied the relief he has the right to ask for. But we must not, upon the case made by the petition, interfere now to declare what the collector shall do; there being yet about two months in which he may perform his duty in the collection of taxes. Not until the first Tuesday of March can a collector of taxes return his delinquent list to the levy court. Now the respondent, in his answer to the application for the writ, states, in effect, that he will receive the taxes of any taxable who will come forward to pay them at any time before March next, or before he returns his delinquent list. As the possession of a receipt for a county tax assessed to another, especially if that other be unable, from necessity, to spare one day from his work in which to pay it himself, gives the holder a certain control over the freedom of choice at an election, it is not altogether unreasonable that a collector desiring, as a good citizen, untrammeled exercise of the elective franchise, if he be inspired by such a sentiment, should decline to deliver such evidence of payment of tax to any but the real person assessed for it. We do not mean by this remark to be understood as expressing any opinion of the *bona fides* of the course, with respect to such receipts, taken by this respondent as such a collector, nor to give our approval to it; but simply to say that, supposing his course to be an honest one, no great fault should be found with it, for every truly patriotic citizen has a direct political interest that all voters should at least have the opportunity, without dictation or other trammel, of voting their real sentiments.

In the spirit of this, two several bills were introduced into the general assembly at its last session, to enact for Delaware a law upon what is known as the "Australian system;" but the political managers of both parties caused these bills to be defeated,—the one (introduced in the house) by an adverse vote against it; the other (introduced in the senate) by a now-a-days improved mode of reference to a committee who never did, and were never called upon to, report it back for action by the senatorial body. Either of them would have rendered futile the efforts of persons to control the votes

of electors by paying their taxes, or other more direct form of bribery. But this is digression. Coming back to the question before us as a legal one, for we have no right to consider what we cannot but think is its true nature, we must decide the point raised by the case,—whether a collector of taxes can refuse to receive a tax when offered to be paid by the agent or attorney of the taxable. There being no question of the right of a taxable to make an attorney pay his tax for him with the taxable's money, a collector should not hesitate to receive it when offered to him for that purpose. To do so, would, as said before, be a violation of his official oath, a breach of his duty as an officer, and of the stipulations of his official bond. He would also be liable in an action by the taxable, if he suffered any damage or detriment by such refusal. The breach of trust would make him liable to public prosecution by indictment, and of the stipulations of his bond, by proceedings at the instance of the levy court commissioners.

In regard to giving receipts for tax, provided for as aforesaid, the collector, as a matter of duty, is bound to give that; but it is a receipt to the taxable, and he has the power to decline to give into any but his hands. As giving to him personally will be a discharge of such duty, he must be treated as having at least an option or choice as to whom it shall be delivered, and this court cannot interfere with that. Nor is there any real hardship in this to the taxable considered as a voter ; for his right to vote, supposing him to have the other qualifications, depends only upon his having paid the tax assessed against him, and not upon having the collector's receipt in due form to show for it. Possession of it would be convenient, and save trouble at the polls, but the law does not in any case make the production of a receipt for tax a *sine qua non* for the exercise of the ballot; on the contrary, it contemplates that parties paying taxes may not have taken a receipt, or have lost or mislaid one in fact taken ; for such a form of oath of payment of his tax, as well as of other qualification, is provided by section 19 of the general election law, (Rev. Code, 121,) in these words: "If a

vote be objected to, its admission or rejection shall be determined according to the opinion of the majority of the judges, [of election;] but either of the judges may require the inspector to administer to a person    *    *    *    offering to vote on the ground of having paid a tax, and being otherwise qualified according to the constitution, the following oath or affirmation: 'You do solemnly swear [or affirm] that you are of the age of twenty-two years, and that you at this time reside in this hundred, and that you have not voted, and will not vote, on this day in any other hundred, and that you have resided in this county one month    *    *    *    before this election; and that you have within two years paid a county tax which was assessed at least six months before this election,' " etc. Thus, although the law provides for a receipt to be given to the taxable on the payment of his tax, and the collector receiving the tax is bound to give it, yet possession of it, or existence of it even, is not essential to the enjoyment of the right of an elector under the constitution. Payment of the tax assessed is the essential thing, and that may be shown, in the absence of a receipt, by proof of a witness to the payment or the oath or affirmation of the taxable. At the same time the payment must, and should be, in the interest of a fair election, with the taxable's own money, and not that of another person; for if the constitutional requirement of payment of tax by the elector ("have paid a county tax" is the language) could be satisfied by payment of his tax by some one else with that person's own money, then sanction would be given to bribery upon a large scale; payment of the tax of a voter being one of the means resorted to by all professional politicians to control the votes of poor men. As there are none so poor to be unable to pay a poll-tax, a taxable should pay it with his own money, and not be subjected to the control of another in the exercise of the franchise by the fact that such other has paid the tax for him. We think it safe to say that, in the great majority of instances of one man paying the tax for another gratuitously, the object at bottom is not charity at all, but to

12

have possession of the voter's right to the ballot, as a means of controlling the exercise of it in the interest of party. Free, fair elections, with an untrammeled body of electors, is what the welfare of the State demands; but such cannot be obtained if men are allowed to pay taxes for others with money of the payers, and possess themselves with receipts therefor.

The argument in this case has developed the fact that the notion is a prevalent one that exhibit of the tax receipt is required—is a prerequisite—for the use of the franchise. With that in the mind of the voter whose tax is paid for him, it is easy to see that his desire to vote (with many men a passion) will induce him to do almost anything his generous friend, who, at the cost of his own money, has paid the tax for him, will ask at his hands in the way of voting. As, however, the task of a collector would be difficult to ascertain from a party, especially such as tender to him other people's taxes, whose money he was using to pay another's tax with, and no concern of his requiring of him investigation of the fact, he can, at least if he choose to do so, deliver the evidence of payment of the tax to the taxable himself, as one of the ways in which he can discharge his duty in that respect. Should he choose to adopt this course, he will, in all probability, soon realize the fact that offers to pay taxes of other people will fall off sensibly. The county exchequer would, no doubt, suffer to some extent; but a means of bribery—control by one man of the franchise of another —would no longer be used to the same extent as before, and thus elections would better express the will of the people.

The rule to show cause why the writ of mandamus should not be issued is discharged.